# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ANTWAUN L. CHANDLER,

    Petitioner,

v.

ROSS CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:10-CV-1150
JUDGE FROST
MAGISTRATE JUDGE KING

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 3, Respondent's *Return of Writ,* Doc. No. 10, and the exhibits of the parties. Petitioner's request to withdraw his *Motion to Amend* the *Petition*, *see Motion to Stay*, Doc. 16, is **GRANTED**. The *Motion to Amend*, Doc. 14, is **WITHDRAWN.** For the reasons that follow, Petitioner's request for a stay of the action is **DENIED.** The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On August 31, 2001, defendant-appellant, Antwaun L. Chandler ("appellant"), was bound over for trial in the Franklin County Court of Common Pleas, General Division, on charges of aggravated murder and aggravated robbery. Both charges included three-year firearm specifications and the aggravated murder charge also carried a capital specification. On June 11, 2002, appellant pled guilty to the lesser-included offense of murder with a firearm specification. The court sentenced appellant to an indefinite prison term of 15 years to life, plus a consecutive three-year term for the firearm specification. The trial court entered its judgment of conviction on June 18, 2002.
>
> On November 12, 2002, appellant filed his petition for post-

conviction relief. Therein, appellant contended that his trial counsel had lied to him by telling him that a co-defendant by the name of "Delontie Rhym" had implicated appellant and was planning to testify on behalf of the prosecution. In support of his petition for post-conviction relief appellant submitted his own affidavit along with two unauthenticated letters, purportedly written by Rhym.

In the first letter, which is addressed to "Troy," the author instructs the recipient to "tell young blood with you I got the same chrages (sic) he got and I didn't make *no statement* I don't know what they talkin about I don't know what the fuckz going on 'you dig!' and tell that nigga if he goen (sic) write we not goin (sic) to talk about my *case,* "you dig!" ' (Emphasis sic.) In the second letter, which is addressed to "Twaun," the author states, "Dog I'm going to tell my lawyer to come talk to you ok sodon't fuck me man, I don't have shit to do with this, I don't no (sic) nothing."

In his affidavit, appellant avers,*inter alia*, "[trial counsel] persuaded me to enter a guilty plea, specifically, because of the statement Delontie allegedly wrote. For fear of a harsh sentence, I plead (sic) guilty because of counsels (sic) advice. Since, I have learned that [trial counsel] falsely adviced (sic) me to plea (sic) guilty. Particularly, Delontie Rhym did not give any statements implicating me in the murder. Moreover, had I known prior to my plea, I would not have plead (sic) guilty."

On June 30, 2003, appellant filed a motion for production of transcripts of all proceedings in his case, at the state's expense. On December 4, 2003, the court denied the motion.

On August 10, 2004, appellant filed a motion for summary judgment and attached thereto the affidavit of Delontie Rhym. Therein, the affiant declares, "On June 2002 I, Delontie Rhym was apprehended by homocide (sic) detectives and Columbus Police. I was interrogated by detectives about a homocide (sic) that occurred March 2001. Prior to the investigation I never made any statements verbally or written statements that would indicate Mr. Chandler. I never made any promises to the prosecuting attorney that I would testify against Mr. Chandler."

On March 10, 2005, the trial court journalized a decision and entry denying appellant's petition for post-conviction relief. Noting that the petition was based on the allegedly deficient performance of trial counsel, and further noting that no trial occurred because appellant

> pled guilty, the court viewed themotion substantively as a motion to
> withdraw appellant's guilty pleapursuant to CrimR. 32.1. Finding no
> basis upon which to allow withdrawal of appellant's guilty plea, the
> court denied the motion.
>
> Appellant timely appealed and asserts the following three
> assignments of error for our review:
>
> FIRST ASSIGNMENT OF ERROR:
>
> APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF
> COUNSEL GUARANTEED HIM UNDER THE SIXTH
> AMENDMENT OF THE UNITED STATES CONSTITUTION
> WHEN COUNSEL DECEIVED APPELLANT TO PLEAD GULTY
> DUE TO AN INVOLUNTARY PLEA AGREEMENT.
>
> SECOND ASSIGNMENT OF ERROR:
>
> THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION,
> IN NOT CONSIDERING THE CREDIBILITY AND
> ACKNOWLEDGMENT OF APPELLANT'S AFFIDAVIT IN
> SUPPORT OF HIS PETITION, AND TREATING HIS PETITION
> AS A WITHDRAWAL OF GUILTY PLEA, CRIMINAL RULE
> 32.1.
>
> THIRD ASSIGNMENT OF ERROR:
>
> THE TRIAL COURT ERRED IN DENYING APPELLANT'S
> REQUEST FOR TRANSCRIPTS AT STATE EXPENSE.

*State v. Chandler*, No. 05AP-306, 2006 WL 620898, at *1-2 (Ohio App. 10th Dist. March 9, 2006).

On March 9, 2006, the appellate court sustained Petitioner's second assignment of error, and

remanded the case to the trial court. *Id.*

> On remand, appellant filed motions for an evidentiary hearing, for
> production of a transcript at state expense, and to amend and
> supplement his petition. On December 28, 2006, the trial court issued
> a decision and entry granting appellant's motion for an evidentiary
> hearing and denying appellant's motion to amend and supplement his
> petition. Thereafter, on January 16, 2007, appellant filed motions for
> issuance of subpoenas and for appointment of counsel. The trial court
> did not issue written decisions or entries deciding any of appellant's

3

> remaining motions.
>
> The trial court held an evidentiary hearing on appellant's petition on February 8, 2007, and, on March 12, 2007, the trial court issued a decision and entry denying appellant's petition. The trial court's decision indicates that the court heard testimony from appellant, Allen, and assistant prosecuting attorney, Jeffrey Davis. The trial court found Davis and Allen's testimony credible and concluded that appellant failed to overcome the presumption that Allen's conduct fell within the wide range of reasonable, professional assistance. The trial court also found that appellant failed to show that he would not have pled guilty but for his attorney's alleged misrepresentation.
>
> Appellant filed a timely notice of appeal and presently asserts three assignments of error for our review:
>
> [I.] THE TRIAL COURT ERRED WHEN DENYING DEFENDANTS [sic] PETITION FOR POST CONVICTION RELIEF.
>
> [II.] DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED HIM UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION.
>
> [III.] THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN FAILING TO APPOINT COUNSEL FOR DEFENDANT WHO REQUESTED SUCH APPOINTMENT.

*State v. Chandler*, No. 07AP-269, 2007 WL 3036836, at *1-2 (Ohio App. 10th Dist. Oct. 16, 2007). On October 16, 2007, the appellate court sustained Petitioner's third assignment of error, reversing the trial court's judgment and remanding the case to the trial court. *Id.* The trial court again denied relief following a second evidentiary hearing, and the appellate court affirmed that judgment. *State v. Chandler*, No. 09AP-394, 2009 WL 3681649 (Ohio App. 10th Dist. Nov. 5, 2009). On March 3, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Chandler*, 124 S.Ct. 1493 (2010).

On December 2, 2010, Petitioner filed the *pro se* petition for a writ of habeas corpus pursuant

4

to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Petitioner was denied effective assistance of counsel under the Sixth Amendment to the U.S. Constitution.
>
> Petitioner was denied effective assistance of trial counsel when counsel lied to Petitioner that a second co-defendant made statements implicating Petitioner and that his co-defendant agreed to testify against him for a proffer with the State.
>
> 2. Petitioner was denied his Fifth Amendment rights at his post conviction evidentiary hearing.
>
> In the 2008 evidentiary hearing upon cross-examination the prosecutor violated Petitioner's Fifth Amendment right by asking him questions that he did not put into dispute on direct examination.

It is the position of the Respondent that Petitioner's claims are without merit.

## REQUEST FOR A STAY

On November 22, 2011, Petitioner filed a request for a stay of these proceedings to enable him to file a successive post conviction petition. Petitioner proposes to pursue a claim of ineffective assistance of trial counsel based on the resignation of his trial attorney from the practice of law with a disciplinary complaint pending against him[1] According to the documents submitted by Petitioner in support of this request, which were obtained by Petitioner in August 2011, *Motion to Stay*, p. 2, a disciplinary complaint had been filed against Phillip Lon Allen, Petitioner's former attorney, alleging that Allen failed to appear at various court hearings and failed to return telephone calls in regard to several clients. Allen also purportedly failed to respond to requests for documents or to propose a method for refunding unearned fees from clients. The complaint further alleged that Allen

---

[1] Respondent opposes Petitioner's request for a stay. *See* Doc. 17.

5

suffered "from mental illness and/or addition to drugs or alcohol" and was "not receiving adequate treatment for these illnesses" thereby substantially impairing his ability to practice law and represent clients. *See Exhibits to Motion to Amend*. Allen subsequently resigned from the practice of law in Ohio. *In re Resignation of Allen*, 124 Ohio St.3d 1224 (2010). *See id.*

In *Rhines v. Weber,* 544 U.S. 269 (2005), the United States Supreme Court held that a stay of habeas corpus proceedings is appropriate only where a petitioner can establish "good cause" for failing to exhaust state court remedies, and where his unexhausted claims are " potentially meritorious." *Id.* at 277. Here, however, Petitioner acknowledges that he obtained the documents proffered in support of this claim more than three (3) months ago, but has not, apparently, filed a successive post conviction petition in state court. Petitioner does not explain this delay. Thus, it does not appear that he can establish good cause for failing to exhausted this claim of ineffective assistance of trial counsel. *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005)(petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause"); *Riner v. Crawford*, 415 F.Supp. 2d 1207, 1209-11 (D.Nevada 2006)(discussing standards of good cause under *Rhines* adopted by various courts).

Petitioner has likewise failed to establish that his unexhausted claim is potentially meritorious because a successive post conviction petition appears to be procedurally barred. Under O.R.C. § 2953.23, the circumstances under which consideration of the merits of a claim in a successive post conviction petition are strictly limited [2] and are not present here. I n *Neville v.*

---

[2] O.R.C. § 2953.23 provides in relevant part:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:

6

*Dretke,* 423 F.3d 474, 480 (5th Cir. 2005), the United States Court of Appeals for the Fifth Circuit held that claims are "plainly meritless" for purposes of deciding whether to grant a stay of habeas corpus proceedings where, as here, a petitioner is procedurally barred from raising his unexhausted claim in the state courts.

Moreover, even assuming this Court can appropriately consider these recently obtained documents in connection with Petitioner's claim of ineffective assistance of counsel, the record fails to reflect that Petitioner is entitled to relief.[3]

## CLAIM ONE

Petitioner asserts in claim one that he was denied the effective assistance of counsel because his attorney, in order to induce his guilty plea, falsely told Petitioner that co-defendant Rhym had agreed to testify against Petitioner at trial. The state appellate court rejected Petitioner's claim as follows:

---

(1) Either of the following applies:

(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

[3] In *Cullen v. Pinholster,* – U.S. –, –, 131 S.Ct. 1388, 1398 (2011), the United States Supreme Court held, "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."

At the second evidentiary hearing, Chandler was the first person to testify. Chandler claimed that he always intended to go to trial on his charges, despite knowing that Marshawn Shaw, one of the other men charged with robbery and aggravated murder in the case, had reached a plea agreement with the State of Ohio and intended to testify that Chandler was the man who shot and killed the victim during the robbery.

Chandler claimed to have had minimal contact with his court-appointed attorney before the morning he was scheduled for trial. On the morning of the day set for trial, defense counsel informed Chandler that a second man involved in the robbery and murder had been arrested. This second man was Delontie Rhym.

Chandler felt that his attorney had no confidence in the outcome of a trial, feeling that the State of Ohio had the ability to prove Chandler's guilt. The attorney encouraged Chandler to take the plea bargain and avoid the risk of longer incarceration, including a possible sentence of life without parole. The nature of that encouragement and the accuracy of what defense counsel stated were the issues in Chandler's petition for post-conviction relief.

Chandler claimed his counsel said that Rhym had given a statement to police and was going to testify against Chandler. Rhym allegedly was going to testify Chandler was the triggerman in the murder and robbery. After being told this, Chandler decided to take the plea offer. He signed the plea form and answered all the questions required for the trial court to accept his guilty plea. After the plea was accepted, Chandler received the mandatory sentences.

After arriving at prison, Chandler began communicating with Rhym and asking why Rhym had made statements harmful to Chandler. Rhym, who also was in prison by then, denied making the statements and eventually provided an affidavit in which he denied making any such statements. Rhym did not testify at the evidentiary hearing.

Chandler contacted Rhym's attorney, who also said Rhym had not planned to testify against Chandler. Rhym's attorney also did not testify at the evidentiary hearing. As a result of these communications, Chandler felt his lawyer had lied to him to get him to plead guilty.

At the evidentiary hearing, Chandler acknowledged that he was involved in the robbery and murder, but denied being the shooter.

8

However, Chandler acknowledged that at the time of his guilty plea, the prosecution stated that Chandler shot the victim and Chandler did not disagree or deny the statement. Chandler also stated at the plea proceedings that he was pleading guilty because he was guilty.

When asked at the evidentiary hearing to explain his involvement, Chandler claimed to be no more than an observer to a robbery initiated by Marshawn Shaw which ended with Shaw shooting the victim.

Chandler also denied being involved in a separate robbery and shooting which occurred earlier in the day.

The second witness at the evidentiary hearing was Charles Alexander, Chandler's father. Alexander testified that Chandler's attorney told Alexander that Rhym was going to testify against Chandler. Alexander claimed he did not encourage or discourage his son from taking the plea agreement. Alexander also testified that he did not tell his son about the conversation Alexander had with the defense attorney.

The State of Ohio called two witnesses to testify at the evidentiary hearing. The first was Jeffrey R. Davis who was an assistant prosecuting attorney assigned to Chandler's case at the time of trial. Davis testified that an agreement had been reached with Shaw for Shaw to testify against Chandler. Rhym was not originally indicted with Shaw and Chandler due to a lack of evidence. Then a girlfriend or ex-girlfriend of Rhym provided information which allowed the prosecution to believe that they now had sufficient evidence to indict Rhym. Rhym was then arrested a few days before Chandler's trial date.

Davis informed Chandler's lawyer about the developments involving Rhym. Davis told the defense lawyer that they would be approaching Rhym with the same plea offer made to Shaw in return for Rhym's testimony. Davis told the lawyer that the offer of a plea to murder with a gun specification was only open until the following morning. After that, Chandler could expect to face a charge of aggravated murder with a capital specification. Davis indicated that he knew Rhym was represented by counsel, so neither he nor the police detective tried to contact Rhym directly. Davis indicated that he had significant other evidence of Chandler's guilt.

The second witness called by the State of Ohio at the evidentiary

9

hearing was Phillip Lon Allen, who was Chandler's attorney at the time of the plea. Allen gave a history of his extensive experience as a criminal defense lawyer. Allen discussed his actions as counsel for Chandler, including full preparation for trial at a time the key witness was viewed as being Shaw. After Rhym was arrested, Chandler's attitude about going to trial changed drastically.

Allen denied telling Chandler that Rhym had signed a plea agreement or that Rhym would certainly be a witness. Allen also denied telling Chandler or his father that Rhym had made statements implicating Chandler. Allen testified he had regular contact with Chandler during the time he represented Chandler.

*State v. Chandler*, 2009 WL 3681649, at *1-3.

The factual findings of the state appellate court are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

*Renico v. Lett*, – U.S. –, 130 S.Ct. 1855, 1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, 131 S.Ct.10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Harrington v. Richter*, – U.S. –, –, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Petitioner has failed to meet this standard here.

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel.

11

*Hill v. Lockhart,* 474 U.S. 52, (1985); *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

The record reflects that Petitioner pleaded guilty, pursuant to the terms of his negotiated plea agreement, on June 11, 2002, and years before his attorney allegedly committed the misconduct referred to in the disciplinary complaint filed against him. Nothing in the record supports Petitioner's current allegation that his attorney was incompetent, under the influence of drugs or alcohol, or otherwise unable to competently represent Petitioner during the relevant time period. Petitioner does not refer to, and this Court is unable to locate, anything in the transcript of his guilty plea and sentencing, or in his post conviction proceedings, that would support such an allegation. Petitioner's reference to trial counsel's failure to recall certain conversations in the first evidentiary hearing in post conviction proceedings, and his subsequent recollection of conversations in the second evidentiary hearing in post conviction proceedings does not support Petitioner's allegations of incompetence. In any event, Marshawn Shaw, Petitioner's co-defendant, was prepared to testify against Petitioner and apparently would have identified Petitioner as the killer. *Transcript, Post Conviction Evidentiary Hearing*, at 10. Significantly, there was additional substantial evidence

pointing to Petitioner's guilt.[4]  Thus, even without Delontie Rhym's testimony against Petitioner, the case against Petitioner appears to have been strong.

At Petitioner's guilty plea proceeding, the prosecutor indicated that there was "no question" as to Petitioner's identity as the shooter. *Guilty Plea Transcript*, at 4. Petitioner agreed to the prosecutor's statement. *Id.* at 11. He expressly admitted his guilt and stated that he was pleading guilty because he was infact guilty of the offense charged. *Id*. The trial court thoroughly advised Petitioner of all the rights that he was waiving by the entry of his guilty plea. Petitioner at all times indicated that he understood. He had no questions. *Id*. at 9-11. When asked if he wanted to make a statement, Petitioner expressed his remorse to the family of the victim. *Id*. at 15-16. By virtue of his guilty plea, the charges against Petitioner were reduced from aggravated murder with a capital specification to murder with a firearm specification; the prosecutor dismissed the charge of aggravated robbery with a firearm specification. Petitioner thereby substantially reduced his potential prison exposure.

Petitioner has failed to establish that, but for the unreasonable performance of defense counsel, he would not have pleaded guilty. Additionally, evidence of subsequent disciplinary action against an attorney is insufficient to establish the constitutionally ineffective assistance of counsel.

> [C]ourts have declined to adopt a *per se* rule that an attorney who is subject to discipline or disbarment for conduct unrelated to the representation of a defendant in a criminal case should be deemed to have provided constitutionally ineffective assistance of counsel in the criminal proceeding. *See, e.g.*, *United States v. Ross,* 338 F.3d 1054, 1056-57 (9th Cir. 2003); United States v. Mitchell, 216 F.3d 1126, 1131-33 (D.C. Cir.2000); *Vance v. Lehman,* 64 F.3d 119, 122-24 (3d Cir.1995). Rather, a defendant in such a case still must meet the

---

[4] For example, Petitioner had allegedly admitted the killing to one Rico Glass. *Id*. at 58-59. Other witnesses had identified Petitioner in the area immediately prior to the shooting. *Id*. at 111.

> familiar standards of *Strickland v. Washington,* 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984), for establishing the ineffective
> assistance of counsel. *See Ross,* 338 F.3d at 1056-57; *Mitchell,* 216
> F.3d at 1132.

*United States v. Grooms*, No. 88-80651-16, 2009 WL 1543450, at *1, n.1 (E.D. Mich. June 2, 2009).

Claim one is without merit.

## CLAIM TWO

In claim two, Petitioner asserts that he was denied his right against self-incrimination under the Fifth Amendment at his post conviction evidentiary hearing. The state appellate court rejected this claim as follows:

> [T]he trial court's ruling that Chandler had waived his right of self-incrimination at the time of the plea proceedings, was clearly correct with respect to the statements Chandler made in open court at the time of his plea. Chandler was admitting guilt in particular with respect to the homicide and murder and knew he was doing so while entering a plea of guilty.
>
> The trial court's permitting the prosecution to ask about other crimes may have been in error, but Chandler denied all the other crimes, so Chandler was not harmed by the questions. Thus, no reversible error occurred.

*State v. Chandler,* 2009 WL 3681649, at *3. Petitioner has failed to demonstrate that he is entitled to federal habeas corpus relief on this claim. As noted by the state appellate court, Petitioner had already admitted his guilt to murder with a firearm specification, and Petitioner cannot establish any prejudice.

Claim two is without merit.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's *Motion to Amend*, Doc. No. 14, is **WITHDRAWN.** Petitioner's *Motion to Stay*, Doc.

No. 16, is **DENIED.**

## PROCEDURE ON OBJECTION

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *S/ Norah McCann King*  
Norah McCann King  
United States Magistrate Judge

December 27, 2011